**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| AXIOM RESOURCE MANAGEMENT, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 08-487C |
| v. | ) | (Judge Braden) |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S**
**REQUEST FOR A TEMPORARY RESTRAINING ORDER**

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

KIRK T. MANHARDT
Assistant Director

JOHN J. TODOR
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L St., N.W.
Attn: Classification Unit - 8th Floor
Washington, D.C. 20530
Tel.: (202) 616-2382
Fax: (202) 514-8640

July 8, 2008

Attorneys for Defendant

**TABLE OF CONTENTS**

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

DEFENDANT'S OPPOSITION TO PLAINTIFF'S REQUEST
FOR A TEMPORARY RESTRAINING ORDER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

A. This Court Does Not Possess Jurisdiction To Entertain Axiom's Complaint. . . . . 6

B. Axiom Cannot Satisfy The Standards For Preliminary Injunctive Relief. . . . . . . . 8

1. Standard Of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

2. Axiom Has Not Demonstrated A Likelihood Of Success. . . . . . . . . . . . . . 9

3. Axiom Would Not Suffer Irreparable Harm. . . . . . . . . . . . . . . . . . . . . . . 11

4. The Balance Of Harms Would Favor The Government. . . . . . . . . . . . . . 13

5. The Public Interest Favors Denial Of The TRO. . . . . . . . . . . . . . . . . . . . 14

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# TABLE OF AUTHORITIES

**FEDERAL CASES**:

A&D Fire Protection, Inc. v. United States, 72 Fed. Cl. 133-34 (2006). . . . . . . . . . . . . . . . . . . 7, 8

Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1057 (Fed. Cir. 2000).. . . . . . . . 8

Am. Fed'n of Gov't Employees v. United States, 258 F.3d 1294, 1302 (Fed. Cir. 2001). . . . . . . . 8

Axiom Resource Mgmt., Inc. v. United States, 78 Fed. Cl. 576 (2007). . . . . . . . . . . . . . . . passim

Axiom Resource Mgmt., Inc. v. United States, 80 Fed. Cl. 530 (2008). . . . . . . . . . . . . . . . passim

Bannum, Inc. v. United States, 60 Fed. Cl. 718, 723-24 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . 9

Bean Stuyvesant, L.L.C. v. United States, 48 Fed. Cl. 303, 320-21 (2000). . . . . . . . . . . . . . . . . . 9

CACI, Inc. v. United States, 719 F.2d 1567, 1581 (Fed. Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . 8

CCL Serv. Corp. v. United States, 48 Fed. Cl. 113, 120 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . 8

Chapman Law Firm v. United States, 67 Fed. Cl. 188 (2005).. . . . . . . . . . . . . . . . . . . . . . . passim

Corel Corp. v. United States, 165 F. Supp. 2d 12, 16 (D.D.C. 2001). . . . . . . . . . . . . . . . . . . . . . 7

Ezenia!, Inc. v. United States, 80 Fed. Cl. 60, 64 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993).. . . . . . . . . . . . . . . . . . . . . . . . . . 9

Impresa Construzioni Geom. Domenico Garufi v. United States,
238 F.3d 1324, 1333 (Fed. Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

PGBA, LLC v. United States, 57 Fed. Cl. 655, 657 (2003).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

PGBA, LLC v. United States, 389 F.3d 1219, 1230 (Fed. Cir. 2004). . . . . . . . . . . . . . . . . . . . . . 13

RAMCOR Servs. Group, Inc. v. United States, 185 F.3d 1286, 1291 (Fed. Cir. 1999). . . . . . . . . . 8

San Diego Beverage & Kup v. United States, 997 F. Supp. 1343, 1347 (S.D. Cal. 1998). . . . . . 12

**FEDERAL STATUTES AND REGULATIONS:**

10 U.S.C. § 2304c (1994). . . . . . . 6, 7

32 C.F.R. § 199.17 (2006). . . . . . . 2

48 C.F.R. § 16.505. . . . . . . 6

Pub.L. 110-181, Div. A, Title VIII, § 843(a)(2), Jan. 28, 2008, 122 Stat. 237. . . . . . . 6

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| AXIOM RESOURCE MANAGEMENT, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 08-487C |
| v. | ) | (Judge Braden) |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S**
**REQUEST FOR A TEMPORARY RESTRAINING ORDER**

Pursuant to Rule 65 of the Rules of the Court of Federal Claims, defendant, the United States, respectfully submits the following brief in opposition to the application for a temporary restraining order filed by plaintiff, Axiom Resource Management, Inc. ("Axiom"), concerning task orders for program management support services for health care issued by the United States Department of Defense.[1] As we discuss below, the Court does not possess subject matter jurisdiction over this action because Axiom requests that the Court enjoin task orders issued under a previously-awarded, multiple-award contract. Congress has specifically barred such task orders from judicial review. Moreover, even if the Court were to conclude that it possesses jurisdiction and reach the merits of Axiom's request for a temporary restraining order ("TRO"), the Court should deny the request because Axiom has not satisfied the traditional requirements for preliminary injunctive relief.

---

[1] Because the administrative record has not yet been filed in this action, we reserve the right to supplement our discussion of the facts in our brief upon the merits of plaintiff's complaint. We also reserve the right to submit a declaration from the Army with respect to the irreparable harm, balance of hardships and public interest elements at such time as we submit a brief upon the merits of plaintiff's complaint, as these prospective elements would not be found in the administrative record.

## STATEMENT OF FACTS

This action concerns the TRICARE health care system. This Court has previously considered another protest filed by Axiom concerning the TRICARE system. See Axiom Resource Mgmt., Inc. v. United States, 78 Fed. Cl. 576 (2007); Axiom Resource Mgmt., Inc. v. United States, 80 Fed. Cl. 530 (2008). TRICARE is the United States Department of Defense's health care program for active and retired members of the Armed Services, their families, and survivors. See 32 C.F.R. § 199.17 (2006). The TRICARE Management Activity ("TMA") was established to manage these programs. See 32 C.F.R. § 199.17 (2006). TMA is responsible for the policy, management, and budget of TRICARE programs, including "purchased healthcare, provided by TRICARE contractors" and "non-purchased" healthcare, provided by the Military Health System's network of military hospitals and clinics. Axiom, 78 Fed. Cl. at 578.

Axiom filed suit in this Court, seeking to enjoin performance of this September 19, 2006 contract upon the grounds that the Army had not taken sufficient steps to ameliorate an alleged organizational conflict of interest ("OCI") of the successful bidder, Lockheed-Martin Corporation. In its decision dated September 28, 2007, the Court found that the Government had not taken sufficient steps to address this issue. "The Administrative Record, in this case, evidences that Lockheed Martin employees working on the Task Order will have access to "non-purchased" care requirement information that will give Lockheed Martin an unfair competitive advantage in future procurements." Axiom, 78 Fed. Cl. at 599.

On February 26, 2008, this Court issued its memorandum opinion and order granting limited injunctive relief. Axiom, 80 Fed. Cl at 530. The Court held that, "[i]n light of the fact that the initial term of the contract expires on July 21, 2008, at which time the Government may

exercise two one-year options (see AR 472-77 (September 19, 2006 Contract W81XWH-06-F-0440)), the court has decided to issue an injunction, effective on that date, setting aside the continuation of the contract through the exercise of options. This limited injunctive relief allows the Government ample time to re-solicit the contract, if it wishes, while minimizing disruption to ongoing performance." Axiom, 80 Fed. Cl. at 539.

After the Court entered this injunction, and in compliance with the Court's ruling, the Army issued a task order request using a different contract vehicle, the TRICARE Evaluation, Analysis, Management and Support (TEAMS) program, Axiom Contract No. W81XWH-08-D-0024. This is a previously-awarded, multiple-award contract that permits task orders within the scope of the contract to previous awardees of the TEAMS contract. The task order request is designed to cover the scope of the work currently being performed by Lockheed under the contract that was the subject of the Court's injunction. Complaint ¶ 14.

Both Axiom and Lockheed-Martin were awardees under the TEAMS contract. It is our understanding that this task order under the TEAMS contract now being challenged may be terminated by the Government at such time as the Court would resolve the issue of the September 19, 2006 contract,W81XWH-06-F-0440. The Army originally issued requests for task orders to both Axiom and Lockheed-Martin. Complaint ¶ 17. As of this date, the Army has not made any awards pursuant to the task order request under the TEAMS contract.

Subsequent to the task order request, on June 18, 2008, the Army notified Axiom that it had identified an apparent organizational conflict of interest ("OCI") between Axiom and Centre Consulting Incorporated, another TRICARE TMA subcontractor. Complaint ¶ 15. The apparent OCI was that one of the principals of Axiom, Kevin Riley, is married to one of the principals of

Centre Consulting, Barbara Kinosky. Id. The Army determined that this posed an apparent OCI because Centre Consulting is currently performing Category 1 duties, while Axiom is performing Category 2 duties. Category 1 work is mutually exclusive from category 2 and 3 work because of the unlimited (enterprise-wide) access to information that category 1 possesses. Category 1 Services, by their very nature, give the contractor access to extensive data about the contracts of all other TMA contractors. Axiom, 78 Fed. Cl. at 579.

Axiom alleges that, as a consequence of this apparent OCI, the Army informed Axiom that it would not receive any future TEAMS RFPs, and that Axiom would only be permitted to bid upon the TPOD/OGC procurement while the Court's order, dated February 26, 2008, remained in effect. Complaint ¶ 16. Axiom alleges that it "Axiom has never been afforded an opportunity to address the Government's alleged concerns about the supposed OCI between Axiom and Centre nor has the Government performed the necessary actions to levy such a sanction on Axiom." Complaint ¶ 20. Nevertheless, Axiom does not allege that the Army refused to receive its proposal for the task order contract. Indeed, Axiom alleges that the Army informed Axiom that it would be permitted to bid upon the task orders "while the Court's order, dated February 26, 2008, remained in effect." Complaint ¶ 16.

The Government requested that the Court stay the injunction of the options for the September 19, 2006 contract, pending any further possible review before the United States Court of Appeals for the Federal Circuit. Axiom opposed our request. In its opposition, Axiom stated that, "[t]he Government now has decided to obtain the required services under the TEAMS contract vehicle; therefore, the requested relief is unnecessary and moot." Pl. Opp. Mot. Stay,

No. 07-532C (July 2, 2008) at 5. On July 7, 2008, this Court issued a memorandum opinion and order denying our stay request.

On July 3, 2008, Axiom filed suit in this Court. Axiom alleges that the Army's finding of an apparent OCI violates FAR sections 9.4 and 9.5; that the Army's conduct violates the Government's implied duty of good faith and fair dealing, and; that the Army's timing and page limit of the required proposals constituted an improper competitive restriction. Complaint ¶¶ 25-43. Axiom requests that the Court "enjoin the Army from permitting performance of any contract under the TEAMS Contract including the TPOD/OGC procurement for which the Army alleges that Axiom has an unresolved OCI relating to the relationship of Mr. Riley and Ms. Kinosky." Complaint at 11-12. Axiom thus seeks to have this Court enjoin the task orders that the Army engaged in order to secure essential services consistent with the Court's injunction of its previous procurement. Axiom has also requested a temporary restraining order ("TRO") from this Court barring any awards pursuant to the TEAMS contract. Pl. Request TRO; Pl. Mem. in Support of Mot. Prelim. Injunction (July 3, 2008) ("Pl. Mem."). This response follows.

## ARGUMENT

Axiom's request for a TRO should be denied for two principal reasons. First, Axiom has not met its burden to demonstrate that this Court possesses jurisdiction over this action. Axiom's complaint seeks an injunction concerning task orders issued pursuant to a previously-awarded, multiple-award contract. Congress has specifically barred judicial review of such task orders. Second, even if the Court concludes that it possesses jurisdiction and reaches the merits of Axiom's complaint, Axiom cannot satisfy this Court's requirements for preliminary injunctive relief.

### A. This Court Does Not Possess Jurisdiction To Entertain Axiom's Complaint

This Court does not possess jurisdiction to entertain Axiom's complaint because the Congress specifically barred protests of task orders, such as those at issue in Axiom's complaint. Axiom requests that the Court "permit Axiom to fairly compete for *task orders* issued under the TEAMS Contract . . . ." Complaint at 2 (emphasis added). In the Federal Acquisition Streamlining Act of 1994, the Congress specifically barred protests of task orders for multiple-award contracts, such as those at issue in Axiom's complaint. In the 2008 Defense Appropriations Bill, the Congress added a provision that permitted protests of task orders only with the Government Accountability Office. See Pub.L. 110-181, Div. A, Title VIII, § 843(a)(2), Jan. 28, 2008, 122 Stat. 237. Thus, this Court does not possess jurisdiction to review task orders absent a challenge to the scope, period, or maximum value of the underlying contract. The statute as currently written, 10 U.S.C. § 2304c, states:

> § 2304c. Task and delivery order contracts: orders . . .
> (e) Protests. (1) A protest is not authorized in connection with the issuance or proposed issuance of a task or delivery order except for --
> (A) a protest on the ground that the order increases the scope, period, or maximum value of the contract under which the order is issued, or
>
> **(2008 amendments)**
> (B) a protest of an order valued in excess of $10,000,000.
> (2) Notwithstanding section 3356 of title 31, the Comptroller General of the United States shall have exclusive jurisdiction of a protest authorized under paragraph (1)(B).

10 U.S.C. § 2304c(e); see also 41 U.S.C. § 253j(d) (applying same restriction to protests of task orders for non-Department of Defense procurements).

By the plain language of FASA, this Court has never possessed jurisdiction to consider a protest of a task order, such as that alleged in Axiom's complaint. Indeed, recent statutory developments from Congress have only clarified that any protests of task orders are not within this Court's jurisdiction. Although it permitted protests of task orders in excess of $10,000,000, the Congress specified that the Comptroller General would have "exclusive jurisdiction" over such protests. 10 U.S.C. § 2304c(e)(2). The fact that the Congress, in 2008, chose to grant jurisdiction at all solely for task orders in excess of $10,000,000, and then solely to the Comptroller General, reemphasizes that this Court has never possessed jurisdiction over any task order protests.

Instead, the Federal Acquisition Regulations require agencies to provide an internal ombudsman to review such disputes. See 48 C.F.R. § 16.505(5).[2] Axiom has not alleged that it has exercised such a procedure. Axiom did file a protest with the Comptroller General, but chose to dismiss it and file suit in this Court. Complaint ¶ 18. Axiom thus has not availed itself of the available administrative remedies, nor has it demonstrated the statutes or regulations enable this Court's jurisdiction.

This Court has found that it lacked jurisdiction in similar disputes. See, e.g., A&D Fire Protection, Inc. v. United States, 72 Fed. Cl. 133-34 (2006) (finding that bar on protests applied to bid protests in this Court). "The purpose of the Act was to streamline, in some instances, federal procurement actions. In other words, once the task or delivery order contract itself has

[2] "(5) Task-order and delivery-order ombudsman. The head of the agency shall designate a task-order and delivery-order ombudsman. The ombudsman must review complaints from contractors and ensure they are afforded a fair opportunity to be considered, consistent with the procedures in the contract. The ombudsman must be a senior agency official who is independent of the contracting officer and may be the agency's competition advocate."

been obtained through full and open competition, orders made pursuant to that contract are immune from CICA's full and open competition requirement." Ezenia!, Inc. v. United States, 80 Fed. Cl. 60, 64 (2008) (Army decision to issue task orders for computer software not within bid protest jurisdiction) (citing Corel Corp. v. United States, 165 F. Supp. 2d 12, 16 (D.D.C. 2001)). Axiom has not alleged that the Army has increased the "scope, period, or maximum value" of the underlying contract, only that the Army has allegedly treated it unfairly with respect to the award of a task order. Axiom's complaint thus falls outside of this Court's jurisdiction.

It would be illogical for Congress to have added, for the first time, a provision for review of protests of task orders in excess of $10,000,000 if the previous statutes permitted judicial review of all such protests. See A&D, 72 Fed. Cl. at 134 (in deciding that later statutes did not impliedly waive prohibition on protests in FASA, holding that "waivers of sovereign immunity, such as that set forth in § 1491(b)(1), are to be construed narrowly.") (citing Am. Fed'n of Gov't Employees v. United States, 258 F.3d 1294, 1302 (Fed. Cir. 2001)). This statutory revision only clarifies that this Court does not possess jurisdiction over Axiom's complaint.

**B. Axiom Cannot Satisfy The Standards For Preliminary Injunctive Relief**

Even if the Court were to conclude that it possesses jurisdiction to consider the merits of Axiom's TRO request, Axiom has not satisfied the four traditional factors for preliminary injunctive relief. Correspondingly, Axiom's request should be denied.

**1. Standard Of Review**

In a procurement-related challenge, the Court assesses the agency's decision pursuant to the review standard of the Administrative Procedure Act, 5 U.S.C. § 706(2), as incorporated by the Tucker Act, 28 U.S.C. § 1491(b)(4). RAMCOR Servs. Group, Inc. v. United States, 185

F.3d 1286, 1291 (Fed. Cir. 1999). Application of the arbitrary and capricious standard involves neither judicial fact finding, nor review of the agency's factual statements for "substantial evidence." See Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1057 (Fed. Cir. 2000). Rather, the Court will sustain an agency decision "evincing rational reasoning and consideration of relevant factors." Id. at 1058.

Injunctive relief for a disappointed bidder is appropriate "'only in extremely limited circumstances.'" CCL Serv. Corp. v. United States, 48 Fed. Cl. 113, 120 (2000) (quoting CACI, Inc. v. United States, 719 F.2d 1567, 1581 (Fed. Cir. 1983)). In order to obtain a temporary restraining order, a plaintiff must carry the burden of establishing entitlement to this extraordinary relief by clear and convincing evidence based upon the following factors: (1) a likelihood of success on the merits; (2) that the plaintiff will suffer irreparable injury if injunctive relief is not granted; (3) that, if the injunction is not granted, the harm to the plaintiff will outweigh the harm to the Government and third parties; and (4) that granting the injunction serves the public interest. Bean Stuyvesant, L.L.C. v. United States, 48 Fed. Cl. 303, 320-21 (2000); PGBA, LLC v. United States, 57 Fed. Cl. 655, 657 (2003). But see Bannum, Inc. v. United States, 60 Fed. Cl. 718, 723-24 (2004) (applying a preponderance of the evidence standard).

The decision whether to grant an injunction is within the sound discretion of the trial court. FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993). In evaluating whether an agency official's actions were rational, the "disappointed bidder bears a 'heavy burden' of showing that the award decision 'had no rational basis." Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1333 (Fed. Cir. 2001).

### 2. **Axiom Has Not Demonstrated A Likelihood Of Success**

Axiom has not met its burden of demonstrating that this Court possesses jurisdiction with respect to Axiom's complaint. Absent such a showing, Axiom can not demonstrate a likelihood of success upon the merits. Moreover, even assuming, for the sake of argument, that Axiom had met its burden to demonstrate that this Court possesses jurisdiction, Axiom has not demonstrated a likelihood of success upon the merits.

With respect to the alleged violation regarding the apparent OCI involving Axiom, Axiom has not alleged that the Army has refused to consider Axiom's proposal, only that the Army allegedly informed Axiom it would not be permitted to bid upon *future* procurements until the conflict is resolved. Axiom also has not demonstrated that it has attempted to address the apparent OCI, nor has it demonstrated that the Army rejected any efforts they made to do so. Furthermore, Axiom's allegations regarding the page limit and time limit for proposals would be moot if Axiom were, in fact, not permitted to submit a bid. Because Axiom advances these other arguments, by the terms of Axiom's complaint, Axiom has been permitted to bid thus far for this procurement.

Axiom also alleges that the Army's notification of Axiom's apparent OCI was an action to "effectively debar Axiom from further TEAMS procurements." Pl. Mem. at 8; Complaint ¶ 20. We are aware of no facts that would support such an assertion. Indeed, Axiom has only alleged that the Army notified Axiom of an apparent OCI that would prevent Axiom from further Category 2 procurements *only if* Axiom did not resolve it. Axiom has not alleged that it submitted any mitigation plan, nor that the Army has refused to accept such a plan.

With respect to the allegations regarding the time limit and page limit for proposals, Axiom has not alleged any facts showing how these requirements would act any differently upon Axiom's proposal as compared to Lockheed Martin's. Axiom also alleges that the Army made decisions with respect to the timeframe for the submission of proposals and the page limit for proposals that allegedly favored the incumbent, Lockheed Martin. Complaint ¶¶ 22-24; Pl. Mem. at 8-9. Specifically, Axiom alleges that the solicitation gave all parties from June 18, 2008, until June 30, 2008, a period of twelve days, to respond. Complaint ¶ 42. Axiom also complains that the Army specified a 20-page limit for proposals, compared to a 25-page limit in earlier, similar, procurements. Complaint ¶ 40. Axiom also complains that the Army required a quality control plan within this 20 page limit, which Axiom alleges was "already impractical." Complaint ¶ 41.

Axiom does not allege that these decisions violated any particular regulation, only that they fail a generalized requirement of a "reasonable basis" and that they confer a "competitive advantage" to Lockheed Martin. Pl. Mem. at 8. Axiom does not explain, however, how these requirements affected Lockheed Martin any differently than Axiom. By the terms of Axiom's complaint, both bidders face the same response date and page limit. Axiom's allegation that the response date and page limit conferred a competitive advantage to Lockheed Martin thus do not establish a likelihood of success upon the merits. For these reasons, the Court should conclude that Axiom has not demonstrated a likelihood of success upon the merits.

### 3. <u>Axiom Would Not Suffer Irreparable Harm</u>

Axiom would not suffer irreparable harm due to the Government's proceeding with the task orders under the TEAMS contract during the pendency of the bid protest. Axiom has not demonstrated that it is unable to resolve the apparent OCI raised by the contracting officer.

Axiom also not alleged that the Army has stated that it would be unwilling to review any proposed resolution of this issue.

The only injury Axiom alleges is a financial injury from not being able to participate in the new task orders. "Normally, an injury is not considered 'irreparable' if the only injury alleged is monetary loss." Chapman Law Firm v. United States, 67 Fed. Cl. 188 (2005). Loss of business is not irreparable harm. "In every procurement award there are generally more losers than winners. To find that a losing procurement participant suffers irreparable harm merely because it did not succeed with its contract proposal would create in the losing party an automatic right to injunctive relief." San Diego Beverage & Kup v. United States, 997 F. Supp. 1343, 1347 (S.D. Cal. 1998).

Moreover, it is our understanding that Axiom could begin work under any contract issued pursuant to any new solicitation immediately upon the conclusion of any bid protest. Thus, in the event that the Court ultimately rules for Axiom in the underlying protest, Axiom would be able to participate in any resolicitation of these contracts and could begin work immediately upon the issuance of a new contract. "In addition, it is not disputed that some type of bridge contract is always awarded to provide for a transition period between contractors. Keeping the bridge contract in place, therefore, does not deprive the plaintiff of lost profits." Chapman, 67 Fed. Cl. at 193. Thus, Axiom would not suffer irreparable harm if the Court were to decide the underlying bid protest without a TRO. We expect to provide a declaration from the Army explaining the effects of any reprocurement at such time as we file our brief upon the merits of Axiom's complaint.

### 4. <u>The Balance Of Harms Would Favor The Government</u>

Third, if the Court were to order a TRO prohibiting reprocurement, the balance of harms would tip strongly in favor of the Government. After July 21, 2008, pursuant to this Court's earlier injunction, the Army will not have a contractor to deliver the services covered by the September 19, 2006 contract. The task orders in this action are meant to replace those services. Given the short timeframe between now and July 21, if the Court enjoins these task orders, it is our understanding that this could present additional difficulties in procuring these services. We expect to provide a declaration explaining the effects upon the Army of any needed reprocurement at such time as we file a brief upon the merits of Axiom's complaint, if any.

In the earlier action protesting the September 19, 2006 contract, this Court enjoined the exercise of the options on the original contract on the grounds that, "limited injunctive relief allows the Government ample time to re-solicit the contract, if it wishes, while minimizing disruption to ongoing performance." <u>Axiom</u>, 80 Fed. Cl. at 539. Granting the TRO for the task orders would deny the flexibility to the Government that the Court sought to grant in its earlier, delayed, injunction.

Moreover, Axiom should be judicially estopped from seeking immediate injunctive relief. Axiom successfully argued that this Court should deny the stay of its earlier injunction with respect to the September 19, 2006 contract upon the grounds that, "[t]he Government now has decided to obtain the required services under the TEAMS contract vehicle; therefore, the requested relief is unnecessary and moot." Pl. Opp. Mot. Stay, No. 07-532C (July 2, 2008) at 5. On July 7, 2008, the Court issued a memorandum opinion and order denying our stay request. Axiom now seeks to have this Court enjoin the same new task orders that it stated made our stay

request "unnecessary and moot." Axiom's request for a TRO in this action thus contradicts its earlier, successful, opposition to our stay request in the earlier action.

Axiom, on the other hand, would not be harmed by the denial of the TRO because, in any event, it would not begin any services under the new task orders until any new solicitation would be completed. Axiom is not the incumbent contractor for these services, and thus does not stand the risk of losing employees, lost profits, or any other losses due to loss of incumbent status during the pendency of the protest. Even if the Court ultimately finds for Axiom upon the merits, Axiom would not incur economic harm during the period of the protest because Axiom has no entitlement to the task orders until such time as the Army considers all proposals.

Moreover, when balancing the respective harms that can flow from the grant of, or failure to grant, an injunction, the Court may take into account not only the potential harm to the plaintiff and to the government, but also potential harm to third parties. Chapman, 67 Fed. Cl. at 193 (citing PGBA, LLC v. United States, 389 F.3d 1219, 1230 (Fed. Cir. 2004)). In PGBA, the Federal Circuit upheld the trial court's denial of an injunction, after finding that any injunctive remedy would create administrative and financial burdens for the Government, as well as possibly create risks for third parties. Here, to the extent that the granting of a TRO would carry the potential for disruption to the TRICARE services, such a potential harm outweighs any speculative harm to Axiom.

**5. The Public Interest Favors Denial Of The TRO**

Lastly, even if the Court reaches the merits of the dispute, the public interest favors the denial of a TRO. The TRO would result in the Army not receiving the services that were the subject of the September 19, 2006 contract after the July 21, 2008 expiration of the base period

of the original contract. We expect to provide a declaration from the Army regarding these public interest considerations in the event that the Court grants Axiom's relief upon the merits.

In the "stay override" context, this Court has previously found that public safety is an appropriate justification for allowing continued performance of a Government contract that is the subject of a protest. This is particularly the case where, as here, the agency finds an increased risk of adequate services not being performed during the protest period. See Chapman, 67 Fed. Cl. at 194-95 ("public safety" concern of "risk" and "possibility" that buildings will not be properly managed during override period sufficient to sustain CICA override). To the extent that the granting of the TRO would possibly result in a disruption to the TRICARE services, this potential for a disruption weighs against a finding that the TRO would be in the public interest.

Axiom's claims that denial of the TRO would affect "faith in the procurement system," Pl. Mot. TRO at 11, is unfounded. To be sure, preserving competition is one of the main purposes of the this Court's bid protest jurisdiction, and it would affect public confidence if bids could be arbitrarily or capriciously denied. Nevertheless, Axiom's allegations do not establish that the Army has attempted to break or evade the rules of competitive contracting. At most, Axiom has alleged that the Army has not provided an adequate opportunity for it to remedy an apparent OCI perceived by the Army. That "faith," however, would be fully redressed upon this Court's adjudication of the merits of the case. In any event, even assuming such allegations to be true, for the sake of argument, Axiom can receive an adequate remedy from this Court at the conclusion of the case, including a full consideration of the record, without the extraordinary remedy of a TRO in the interim. Therefore, any claim that the denial of the extraordinary remedy of temporary injunctive relief would undermine faith in the procurement system is unfounded.

## CONCLUSION

For these reasons, we respectfully request that the Court deny Axiom's request for a temporary restraining order.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Kirk T. Manhardt
KIRK T. MANHARDT
Assistant Director

s/ John J. Todor
JOHN J. TODOR
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L St., N.W.
Attn: Classification Unit - 8th Floor
Washington, D.C. 20530
Tel.: (202) 616-2382
Fax: (202) 514-8640

July 8, 2008

Attorneys for Defendant

**CERTIFICATE OF FILING**

I hereby certify that on July 8, 2008, a copy of foregoing "DEFENDANT'S OPPOSITION TO PLAINTIFF'S REQUEST FOR A TEMPORARY RESTRAINING ORDER" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ John J. Todor