# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

AXIOM RESOURCE MANAGEMENT, INC.

Plaintiff,

v.

THE UNITED STATES

Defendant.

CoFC No. 08-487C
**BID PROTEST**
(JUDGE BRADEN)

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO SUPPLEMENT THE RECORD

**COMES NOW** the Axiom Resource Management, Inc. ("Axiom"), by and through undersigned counsel, and hereby files this Memorandum in Support of Plaintiff's Motion to Supplement the Record in this matter. By its Motion Plaintiff Axiom seeks to supplement the record with the deposition of the contracting officer because of the clear gaps in the record as filed and the record's failure to completely explain the bases for the Government's actions here.

## I. Factual Background

On June 18, 2008, the Government announced its intention to seek proposals (the "TPOD/OGC procurement") under the TRICARE Evaluation, Analysis, and Management Support Program ("TEAMS") for work currently being performed by Lockheed Martin ("LM") under Request for Quotations No. 154160 (under Contract No. GS-10F-0065N) (the "Solicitation" or the "RFQ"). The Army's award under the RFQ was the subject of prior litigation before this Court. See Axiom Resource Management, Inc. v. United States, 80 Fed. Cl. 530 (2008).

Additionally, on June 18, 2008, the Army's contracting officer for TEAMS, Dan Signore, informed Axiom that he had identified Axiom as having an alleged OCI relating to the fact that one of the principals of Axiom (a Category 2 contractor), Kevin Riley, is married to Barbara Kinosky, one of the principals of Centre Consulting ("Centre") who Signore inaccurately claims is performing Category 1 work as a subcontractor to a company called Intellidyne under an indefinite delivery/indefinite quantity ("ID/IQ") vehicle called TAARMS. Agency Report ("AR"), Tab 9.

According to the record submitted by the Government in this proceeding:

> All requirements under TEAMS IDIQ contract are Category 2: Program Management Support—Services which assist TMA in planning and managing its activities and programs. . . .
> All requirements under TAARMS IDIQ contracts are Category 1: TMA Internal Support-Services, which by their very nature give the Contractor access to extensive data about the contracts of all other TMA contractors. Contractor participation in more than one of these categories may give rise to an unfair competitive resulting from access to advance acquisition planning, source selection sensitive or proprietary information. Approved prime and subcontractors in one category cannot be an approved source prime or subcontractor at the same time in another category. Furthermore, Category 1 involvement is mutually exclusive from work in either of the other two categories, as work in Category 1 will provide sensitive business information about the contractors working in Categories 2 and 3. By its very nature, it is impossible to approve a mitigation plan for a contractor working in Category 1, and requesting to perform work in Category 2 or 3.

Id. (emphasis in original). The record is silent on any investigation that Mr. Signore did to determine if there are any Category 1 contractors or subcontractors who are also approved contractors or subcontractors under Category 2. Similarly, the record is silent as to the affect of Lockheed Martin appearing as an approved subcontractor under a Category 3 prime contractor as well as performing Category 2 work for TMA. Exhibit 1, Declaration of Kevin Riley ("Riley Dec") at ¶ 4.

Apparently, Mr. Signore allegedly first learned of the relationship between Ms. Kinosky and Mr. Riley on June 12, 2008 based on input from an unnamed non-government source. AR, Tab 16. The record is silent as to the investigation, if any, that Mr. Signore did into the allegation or why the relationship between Ms. Kinosky and Mr. Riley would be required to be addressed under the required OCI certification for TEAMS which states:

- Does the Offeror or any intended subcontractors, teaming partners, proposed employees, or **affiliates** have **Unequal Access to Information**? Would award to the Offeror result in the Offeror having the **opportunity to access nonpublic information** that **may give the Offeror a competitive advantage** in a later competition for a government contract? Specifically, will the Offeror/Contractor have **access to any of the following information**:
  - **Budget(s), or Budget Information**?
  - **Acquisition Sensitive Information related to the procurement process** to include, but not limited to Acquisition Plans, Requirements, Statements of Work, or Evaluation Criteria?
- Does the Offeror or any intended subcontractors, teaming partners, proposed employees, or **affiliates** have "***impaired objectivity***" because the Offeror's ability to render impartial judgments may be compromised because of its conflicting role(s) on this effort and other government contracts?
- Do "***biased ground rules***" exist? Most commonly, this would include a situation where the Offeror has, as a government contractor, written specifications or a statement of work for this effort, which could skew competition in favor of itself?
- Is the Offeror aware of **any other information relating to this proposed contract/order, which could reasonably be construed as creating an OCI**?

AR, Tab 13. Additionally, the record is silent as to what other relationships would trigger the OCI since there is no allegation that either Centre or Axiom are working in both categories 1 and 2; rather, the allegation appears that the two companies are some how affiliated or that Ms. Kinosky and Mr. Riley will share information about their work. Additionally, the record is silent as to whether Ms. Kinosky and Mr. Riley have any information about TMA's work that they could share across their company boundaries. This is especially true given the fact that Axiom's

employees working on Category 2 work are required to and have executed the enclosed non-disclosure agreement which prevents them from disclosing proprietary information to anyone not "directly concerned with the performance of this delivery order." See Exhibit 2, Axiom non-disclosure agreement. Mr. Signore has apparently given no thought as to how this language affects the alleged OCI since Mr. Riley is not involved in Axiom's performance of its specific contracts. See Riley Dec. at ¶ 5.

Finally, the record is unclear as to why Mr. Signore thought it was appropriate to bar Axiom from not only being considered for award of any TEAMS contract until the alleged OCI is resolved, but also being barred from even receiving notice that such procurements even exist. AR, Tab 8. Based on Mr. Signore's actions Axiom now has lost millions of dollars in potential awards at risk, which will severely cripple Axiom's ability to continue to conduct business. Riley Dec. at ¶ 3.

## II. Argument

This Court has identified the following analysis which it will use in considering "extra-record" evidence:

> (1) when agency action is not adequately explained in the record before the court; (2) when the agency failed to consider factors which are relevant to its final decision; (3) when an agency considered evidence which it failed to include in the record; (4) when a case is so complex that a court needs more evidence to enable it to understand the issues clearly; (5) in cases where evidence arising after the agency action shows whether the decision was correct or not; (6) in cases where agencies are sued for a failure to take action; (7) in cases arising under the National Environmental Policy Act; and (8) in cases where relief is at issue, especially at the preliminary injunction stage.

See Vantage Associates, Inc. v. U.S., 59 Fed. Cl. 1 at 13 (2003) *citing* Esch v. Yeutter, 876 F.2d 976, 991 (D.C.Cir 1989). In applying the standard first articulated in Esch, this Court has stated

where the parties will file or have filed cross motions for judgment on the record under CFCR 56.1 information outside of the administrative record may be considered by the Court by stipulation or by order of the Court. See RCFC 56.1(a); see also ABF Freight System, Inc. v. United States, 55 Fed. Cl. 392, 395 (2003); Rust Constructors, Inc. v. United States, 49 Fed. Cl. 490, 493 (2001). Additionally, parties may supplement the administrative record in certain limited situations to "preserve a meaningful judicial review." North Carolina Div of Servs. For the Blind v. United States, 53 Fed. Cl. 147, 158 (2002) *aff'd,* 60 Fed. Appx. 826 (Fed. Cir. 2003); see also Aero Corp., S.A. v. United States, 38 Fed. Cl. 408, 411 (1997).

The Court has also stated that it will allow the administrative record to be supplemented when to do so will "help explain an agency's decision and thereby facilitate meaningful judicial review of the agency decision, particularly when a subjective value judgment has been made but not explained." Orion Intern. Technologies v. United States, 60 Fed.Cl. 338, 343 (Fed. Cl. 2004); see also Blue & Gold Fleet L.P. v. United States, --- Fed.Cl. ---, 2006 WL 979277 (Fed.Cl. 2006) *citing* Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1333 (Fed.Cir. 2001)(Administrative record may be supplemented where "required for meaningful judicial review"); Al Ghanim Combined Group Co. Gen. Trad. & Cont. W.L.L. v. United States, 56 Fed.Cl. 502, 508 (Fed. Cl. 2003) (Allowing supplementation of "evidence without which the court cannot fully understand the issues").

The deposition of Mr. Signore is necessary to complete the record because of certain gaps in the administrative record as it currently exists and the clear bias on Mr. Signore's part in his dealings with Axiom. Where it is clear as it is here that Ms. Signore's decision to identify an OCI in the case of Axiom, but not Intellidyne, and bar Axiom from even receiving notice of future procurements, or even receiving modifications to procurements which Axiom had

received prior to Mr. Signore's June 18, 2008 letter, or even receiving notification that Axiom had won or lost procurements that had been evaluated prior to Mr. Signore's June 18, 2008 letter, is totally based on a desire to be rid of Axiom at any cost and or punish Axiom for filing the prior bid protest, the deposition of Mr. Signore is necessary to complete the record. See Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1338-39 (Fed.Cir. 2001), *remanded to* 52 Fed.Cl. 421 (Fed.Cl. 2002) (Court ordered supplementation of administrative record with contracting officer's deposition testimony in order to determine the basis for the contracting officer's responsibility determination that was under review). This Court has previously stated that "when an explanation of a contracting officer's decision is required for meaningful judicial review, a reviewing court has the power, and sometimes the obligation, to require such an explanation." Asia Pacific Airlines v. United States, 68 Fed.Cl. 8, 18 (Fed. Cl. 2005) (Court granted leave to plaintiffs to depose contracting officials and supplement record with their testimony where the contracting officials' rationale for terminating offeror's participating in the solicitation was not apparent from the administrative record).

Furthermore, this Court often considers supplemental record evidence in protests involving allegations of bias or bad faith like there are here. International Resource Recovery, Inc. v. United States, 61 Fed.Cl. 38, 42 (Fed. Cl. 2004) ("[a]llegations of bias, prejudice and bad faith...which depend upon a Government official's past conduct toward a bidder necessarily cannot be subsumed within the record of a challenged award decision."); Orion Intern. Technologies v. United States, 60 Fed.Cl. 338, 343-344 (Fed. Cl. 2004) ("the record may be supplemented with (and through discovery a party may seek) relevant information that by its very nature would not be found in an agency record-such as evidence of bad faith"); Galen Med. Associates., Inv. v. United States, 56 Fed.Cl. 104, 109 (Fed. Cl. 2003) (Allowing depositions

where record was insufficient with regard to allegation of "a long pattern of questionable activity [that] might be relevant to prove agency bias"). In fact the allegations are strikingly similar to a prior case where the contracting officer has taken actions which are in effect a *de facto* debarment of the protester. See J.C.N. Constr. Co. v. United States, 60 Fed.Cl. 400, 405, fn. 8 (Fed. Cl. 2004) (Ordering depositions regarding asserted bias and de facto debarment). Given the current state of the record and the gaps in the rationale for Mr. Signore's actions, the taking of his testimony under oath is necessary to resolve the issues raised in the Complaint.

**WHEREFORE** Plaintiff respectfully requests that the Court issue an order permitting Axiom to take the deposition described herein.

Respectfully submitted,

Date: 7/10/08

By: ______________________

James S. DelSordo, Esq.
Argus Legal, LLC
9255 Center St., Suite 307
Manassas, VA 20110
(703) 368-8770
fax (703) 368-8772

Counsel for Plaintiff Axiom Resource Management, Inc.